OPINION *Page 2 
{¶ 1} Defendant-Appellant, was indicted on one count of Theft, a felony of the fifth degree, in violation of R.C. 2913.02(A)(1). Appellant filed a Notice of Alibi indicating he was at his home in Columbus, Ohio on the date and at the time of the offense. A "Notice of Waiver of Jury Trial" was executed by Appellant, and the case proceeded to a bench trial. The trial court found Appellant guilty of the theft charge and ordered a presentence investigation. Appellant was sentenced to a prison term of 12 months.
 {¶ 2} Wendy Johnson, a family physician, testified she arrived at the New Start Early Learning Center shortly after 7:00 a.m. on May 14, 2007. She normally was the first to arrive each morning at the daycare. On this day, a dark blue van was parked in the spot next to where Johnson normally parked. Inside the van was an African-American man who was slightly reclined in the driver's seat. Johnson was nervous, so she quickly took her children inside and notified teacher Holly Clark of the situation. Clark continued to look out the window and informed Johnson the man opened the door of Johnson's car. The daycare door had a deadbolt, but Johnson was able to exit the daycare. The van was pulling away as Johnson went outside; however, Johnson was able to get the license plate from the van. When police arrived, Johnson realized her wallet was missing from her car. The wallet contained approximately $300.00 in cash, several credit cards, membership cards and photographs. Between seven to ten days after the wallet was taken, Johnson received a call from a woman who indicated she found the wallet by a dumpster at Children's Hospital. The contents were removed from the wallet and were scattered about the area. The credit cards and cash were not recovered. At some point, Johnson was shown a photo array and identified number two *Page 3 
and number six as being more familiar than the other photos. At the time of the photo array, Johnson stated she was 30 percent sure one photo was Appellant, and the other she assigned 70 percent. The photo which was actually Appellant was the photo designated at 30 percent. Johnson testified she did not get a very good look at the man except she was able to tell police the man was a balding black man. On the day of trial, Johnson saw Appellant in the courthouse and advised her husband she recognized Appellant. While testifying at trial, the trial court asked Johnson whether Appellant was the man she saw on May 14. She could not say with absolute certainty that Appellant was the man she saw in the van on May 14.
 {¶ 3} Holly Clark testified she only saw the top of the man's head. The man's head was bald with some indentations. Clark testified Appellant's head was identical to what she saw on May 14.
 {¶ 4} Officer Ryan Pentz testified the license plate number given by Johnson was to a Ford Windstar registered to Appellant. He was able to download Appellant's driver's license photo which revealed Appellant to be a balding black man. Officer Pentz went to Appellant's home and saw a blue Windstar. Appellant advised officers he was the only person who drives the van and further stated he was at work at Cardinal Health at the time of the theft. Officers then went to Cardinal Health and learned Appellant was not at work that day.
 {¶ 5} Appellant presented Johnny Stokes, who is Appellant's father-in-law. Stokes testified he lives with Appellant. Appellant left around 6:30 a.m. on May 14 and returned around 7:15 a.m. Keisha Moman, Appellant's wife, testified she was home when Appellant left at 6:30 a.m. when he arrived back home at approximately 7:05 a.m. *Page 4 
 {¶ 6} Gary Kifer was Appellant's work supervisor. He called Appellant on Sunday, May 13 to advise they would not be working on May 14, but Kifer had to leave a voicemail with this information.
 {¶ 7} Finally, Appellant testified he left for work around 6:30 a.m. As he drove to work, he listened to the voicemail from Kifer advising they were not going to work on May 14. He then testified, he turned his car around and went home arriving around 7:10 a.m. Appellant denied any involvement in taking Johnson's wallet.
 {¶ 8} Counsel for Appellant has filed a Motion to Withdraw and a brief pursuant to Anders v. California (1967), 386 U.S. 738, rehearing den. (1967), 388 U.S. 924, indicating that the within appeal was wholly frivolous and setting forth proposed Assignments of Error. Appellant did not file a pro se brief alleging any additional Assignments of Error. Appellee also did not file a brief.
 I. {¶ 9} "COUNSEL FOR THE DEFENDANT PROVIDED INEFFECTIVE ASSISTANCE.
 II. {¶ 10} "THE FINDING OF GUILTY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} In Anders, the United States Supreme Court held if, after a conscientious examination of the record, a defendant's counsel concludes the case is wholly frivolous, then he should so advise the court and request permission to withdraw. Id. at 744. Counsel must accompany his request with a brief identifying anything in the record that could arguably support his client's appeal. Id. Counsel also must: (1) furnish his client *Page 5 
with a copy of the brief and request to withdraw; and, (2) allow his client sufficient time to raise any matters that the client chooses. Id. Once the defendant's counsel satisfies these requirements, the appellate court must fully examine the proceedings below to determine if any arguably meritorious issues exist. If the appellate court also determines that the appeal is wholly frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements, or may proceed to a decision on the merits if state law so requires. Id.
 {¶ 12} Counsel in this matter has followed the procedure in Anders v.California (1967), 386 U.S. 738, we find the appeal to be wholly frivolous and grant counsel's motion to withdraw. Appellant has not filed a brief of his own or suggested any other possible Assignments of Error.
 I. {¶ 13} In his first potential Assignment of Error, Appellant suggests he was denied effective assistance of trial counsel, however, Appellant does not cite any portions of the record in support of this argument.
 {¶ 14} The standard for determining whether a defendant received ineffective assistance of counsel is outlined by the Ohio Supreme Court in State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, which is based upon the Supreme Court of the United States case of Strickland v.Washington (1984), 466 U.S. 668. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
 {¶ 15} The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense *Page 6 
counsel's essential duties to Appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v.Fretwell (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180;Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 16} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142,538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 17} In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965, citing Lockhart v. Fretwell, supra.
 {¶ 18} Appellant has not cited to any portion of the record in support of the idea Appellant received ineffective assistance of counsel. The Court has reviewed the transcript and record and does not find any instance of ineffective representation.
 {¶ 19} Appellant's first Assignment of Error is overruled.
 II. {¶ 20} In Appellant's second potential Assignment of Error, he argues his conviction was against the manifest weight of the evidence. *Page 7 
 {¶ 21} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N .E.2d 541 super ceded by constitutional amendment on other grounds as stated by State v. Smith,80 Ohio St.3d 89, 1997-Ohio-355, 684 N .E.2d 668, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 22} The trial court found the testimony of Stokes and Keisha Moman to be in conflict. Stokes testified Keisha was not home when Appellant arrived back at 7:15. Keisha testified she was home when Appellant arrived. The trial court found Clark's identification of Appellant to be credible. Further, the license plate number given by the witnesses matched Appellant's license plate number. The description of the suspect's vehicle also matched Appellant's vehicle.
 {¶ 23} Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Essentially, Appellant wanted the trial court to believe the witnesses got the wrong license plate number. As the trial court noted, *Page 8 
the plate number given by the witnesses was registered to a vehicle which matched the description of the vehicle driven by the suspect. Further, the owner of the vehicle matched the description of the suspect. Appellant admitted he was the only person who ever drove the vehicle.
 {¶ 24} Based upon our review of the record, including the trial transcript, we cannot say this is one of those extraordinary cases where the trier of fact clearly lost its way.
 {¶ 25} Appellant's second Assignment of Error is overruled.
 {¶ 26} For these reasons, after independently reviewing the record, we agree with counsel's conclusion that no arguably meritorious claims exist upon which to base an appeal. Hence, we find the appeal to be wholly frivolous under Anders, grant counsel's request to withdraw, and affirm the judgment of the Delaware County Court of Common Pleas.
 {¶ 27} Counsel's Motion to Withdraw is granted. The judgment of the Delaware County Court of Common Pleas is affirmed.
 Wise, J. Gwin, P.J. and Farmer, J. concur *Page 9 
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is affirmed.
Attorney Scott A. Wolf's motion to withdraw as counsel for Appellant is hereby granted.
 COSTS TAXED TO APPELLANT. *Page 1